McGREGOR W. SCOTT
United States Attorney
JASON HITT
KENNETH J. MELIKIAN
Assistant U. S. Attorneys
501 I Street, Suite 10-100
Sacramento, Ca. 95814
Telephone: (916) 554-2751

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. CR-S-06-0479 MCE |
| ) | |
| Plaintiff, ) | EX PARTE APPLICATION BY THE UNITED |
| ) | STATES TO STAY MAGISTRATE JUDGE'S |
| ) | ORDER AUTHORIZING PRETRIAL RELEASE |
| v. ) | FOR DEFENDANT PENDING MOTION FOR |
| ) | REVOCATION OF THE RELEASE ORDER; |
| MARK EDWARD PARKER, ) | AND ORDER |
| ) | |
| Defendant. ) | |
| _____) | |

The United States of America, plaintiff herein, respectfully files this ex parte application for stay of Magistrate Judge Drozd's release order for defendant Mark Edward PARKER. Magistrate Judge Drozd entered his ruling on November 20, 2006.

**BACKGROUND**

On November 15, 2006, a federal complaint alleging possession with intent to distribute at least 50 grams of cocaine base. DEA Agents arrested PARKER at the Solano County Courthouse and PARKER appeared for his initial appearance before Magistrate Judge Drozd on November 17, 2006.

On November 17th, the government moved for pretrial detention on the basis of flight risk and danger. Magistrate Judge Drozd

1

temporarily detained PARKER pending a further detention hearing.

On November 20, 2006, the detention hearing was held and Magistrate Judge Drozd ordered PARKER released on a $350,000 bond secured by the posting of equity in his rental property, the remainder of equity to be posted by his mother's rental properties and the third party custody of his mother, Velma Livingston.

The United States has decided to appeal Magistrate Judge Drozd's release order to the district court pursuant to 18 U.S.C. § 3145. The government intends to file said appeal, as well as a supporting memorandum of points and authorities, today, December 5, 2006, or at the latest, tomorrow, December 6, 2006. The government will request that its appeal be heard by the district court on Judge England's regular criminal calendar on Tuesday, December 12, 2006.

The defendant is still in custody and has not yet posted the $350,000 property bond required to secure his release. In fact, the government has not received the documents from defense counsel which must be examined prior to the defendant's release.

As such, the government now moves to stay the November 20, 2006, order releasing PARKER on $350,000 bond. The stay would be pending the district court's disposition of the government's appealing of the Magistrate Judge's order authorizing pretrial release.

**ANALYSIS**

The government is entitled to a <u>de novo</u> hearing on the instant detention issue before the district court, for any order by a magistrate judge setting terms and conditions of pretrial release is reviewed <u>de novo</u> when appealed to a district court. United

1   States v. Koenig, 912 F.2d 1190, 1193 (9th Cir. 1990). Further, it
2   is not known if, or when, the defendant will be able to post the
3   property bond required for his release.
4       This court has the authority to authorize the requested stay
5   pursuant to 18 U.S.C. § 3142(f), which provides that a defendant
6   may be detained pending completion of the detention hearing. In 18
7   U.S.C. § 3145, Congress expressly identified a clear public
8   interest in permitting review of a magistrate judge's release
9   order. Requiring release pending review by the district court
10  would frustrate the very purpose of this review. United States v.
11  Huckabay, 707 F. Supp. 35, 37 (D.Me. 1989). Subsection 3145(a)
12  mandates a prompt review of the motion to revoke, thereby providing
13  a reasonable safeguard against unduly extended detention during
14  review.
15      As the Huckabay court explained, there is nothing in the
16  statute or in its legislative history to suggest that Congress
17  intended to deny the district court a reasonable opportunity to
18  inform and exercise its discretion, which necessarily contemplates
19  a hearing and de novo reconsideration of the magistrate's decision.
20  Id. at 37.
21      Section 3142(f) incorporates the important Congressional aim
22  of assuring meaningful review of release orders, inasmuch as
23  subsection 3142(f) permits detention "pending completion of the
24  [detention] hearing," which reasonably includes a limited period
25  for prompt review of the magistrate's release order under
26  § 3145(a). Id.; see also United States v. Geerts, 629 F. Supp.
27  830, 831 (E.D. Pa. 1985)(finding district court authority for stay
28  order within the provisions of 18 U.S.C. § 3142(d) which provides

3

1  for temporary detention pending the revocation of an order for
2  conditional release).
3      The government believes that the reasons for the requested
4  stay are compelling.  The government submits that the defendant is
5  a flight risk and a danger to the community.  He is charged by
6  Indictment with possessing with the intent to distribute at least
7  50 grams of cocaine base.  Indictment, filed Nov. 29, 2006.  He has
8  suffered two prior drug trafficking convictions; both are alleged
9  in the Indictment.  Id.  He was first convicted of possessing
10 cocaine base for the purpose of sale, in violation of California
11 Health and Safety Code Section 11351.5, on or about July 15, 1991.
12 He was later convicted of sale or transportation of cocaine base,
13 in violation of California Health and Safety Code Section 11352, on
14 or about July 20, 1994.  Finally, on or about November 26, 2003,
15 the defendant was convicted of the misdemeanor offense of
16 possessing less than one ounce of marijuana, in violation of
17 California Health and Safety Code Section 11357(a).
18     The defendant faces a mandatory minimum of 10 years in prison.
19 21 U.S.C. § 841(b)(1)(A)(iii) (providing 10-year mandatory minimum
20 in cases involving at least 50 grams of a mixture and substance
21 containing cocaine base).  The defendant's prior felony drug
22 offense triggers a steeper penalty - a 20-year mandatory minimum.
23 21 U.S.C. § 841(b).  Moreover, because PARKER's criminal history
24 renders him a career offender, (see U.S.S.G. § 4B1.1), his offense
25 level is 37, and his criminal history category is VI, with a
26 corresponding guideline range of 360 months to life in prison.
27 U.S.S.G. § 4B1.1.
28 ///

February 9, 2006, Incident

The facts of the instant case support detention as a flight risk and danger because the defendant covered both grounds with his conduct. On February 9, 2006, Vallejo Police Department Patrol Officer Doug Wilcox attempted to stop a vehicle driven by PARKER for excessive speed. PARKER initially pulled over, but absconded shortly thereafter. As Officer Wilcox followed PARKER, PARKER fled at a high rate of speed. In an attempt to get away, PARKER ran a red light and crashed into another vehicle[1] which was lawfully in the intersection of Highway 37 and the Fairgrounds Boulevard onramp.[2]

After Officer Wilcox approached the defendant's driver's door, the defendant repeatedly disobeyed the officer's orders to place his hands on his head. When the defendant turned as if to flee out from the passenger's door, Officer Wilcox sprayed PARKER with pepper spray. It was only then that PARKER finally complied with the officer's orders.

Responding officers then searched PARKER's vehicle pursuant to his arrest for fleeing from a police officer. Officers immediately noticed the strong smell of marijuana emanating from within PARKER's vehicle. Sgt. Robinson observed the driver's side window of PARKER vehicle was down. He also observed a brown paper bag

---

[1] Fortunately, the victim of PARKER's flight, the driver of the he crashed into, was not seriously injured.

[2] PARKER should never have been driving in the first place because his license had been suspended on multiple occasions by the DMV. If he had honored DMV's suspension of his license, he would not have been driving on February 6th, would not have been apprehended after a high speed chase, and would not be facing the instant charges.

5

1   lying in the street approximately 15 feet from the driver's side
2   door of PARKER's vehicle in the number one lane of traffic.
3       It appeared that PARKER had thrown the bag from his vehicle
4   based upon its positioning and lack of other explanations for its
5   presence in the middle of Highway 37.  Inside the bag, Sgt.
6   Robinson found cocaine base and marijuana in quantities and
7   packaging consistent with distribution.
8       The initial arresting officer discovered PARKER in possession
9   of $1,159 in U.S. currency in denominations consistent with
10  narcotics sales.  Specifically, the currency was broken down into
11  two $50 bills, thirty-two $20 bills, twenty-six $10 bills, and
12  twenty-eight $5 bills.[3]
13      A presumptive test performed by the Forensic Service Division
14  of the Contra Costa County Sheriff's Department on the white chunky
15  substance found in the bag next to PARKER's vehicle tested positive
16  for the presence of cocaine base and weighed 74.11 grams.  DEA has
17  taken custody of the cocaine base for testing.
18      PARKER gave a statement after being read his warnings under
19  Miranda.  PARKER said he pulled over for the initial officer
20  thinking that the officer was clearing the road for an ambulance.
21  According to PARKER, when he did not see any ambulance, he drove
22  away.  PARKER could not explain why he ran the red light and
23  /////

---

[3] Such denominations are consistent with PARKER being involved in narcotics distribution because drug users often pay for crack cocaine with money they get on the street.  It is therefore common for drug users only to be able to obtain smaller bills, such as $20s, $10s, and $5s in order purchase narcotics and for drug dealers to carry such proceeds in these denominations.

6

collided with another car.  PARKER denied any knowledge of the narcotics.

Considering all of the information above, the only way to ensure the defendant's presence at the hearing on the government's motion to revoke the magistrate judge's order authorizing pretrial release is to stay that order pending consideration of its possible revocation.  Failure to issue such a stay could irrevocably and irreparably harm the United States because the defendant is a danger if released to the community and poses a risk of fleeing from this District if he is released.

The government therefore respectfully requests that the magistrate judge's order of release be stayed pending the district court's disposition of the motion for revocation of release order.

Respectfully Submitted,

McGREGOR W. SCOTT
United States Attorney

DATED: December 6, 2006        By: /s/Jason Hitt
                                   JASON HITT
                                   KENNETH MELIKIAN
                                   Assistant U.S. Attorneys

**O R D E R**

The ex parte application by the government to stay the order setting bond and conditions of release issued on November 20, 2006, relies in large part on the seriousness of the pending charges and the defendant's significant criminal record. However, the application fails to mention the factors that influenced the court's release order. At the hearing in this matter the government conceded that the federal charges now pending against the defendant are the same charges that were pending against him for ten months in state court. It was also undisputed that the defendant was released on bond in state court for the last ten months and during that period had made all his scheduled court appearances, had no contact with law enforcement and had apparently fully complied with the conditions of his release.[4] Indeed, the defense representations that a preliminary hearing had been held in state court, that the allegations of criminal conduct were heavily disputed by the defense and that the defendant was arrested on the new federal charge after his appearance in state court where a trial date was to have been set, all went uncontested by the government at the detention hearing. Based upon these unusual

---

[4] Indeed, at the hearing the government appeared to agree that these circumstances made the case a "close one" with respect to detention or release despite the defendant's prior record and the seriousness of the charges. The government argued that therefore the bond should be fully secured before a release order was entered and that the defendant's argument for release on an unsecured bond pending the posting of property should be rejected. The court agreed. No request for a stay of the order setting bond was made by the government at that time nor was there any suggestion that an appeal from the order would be considered. Although conditions of release were set on November 20, 2006, this ex parte application for a stay was not filed until December 5, 2006. The government offers no explanation for this delay.

circumstances, the undersigned found that the statutory presumptions with respect to flight risk and danger to the community were rebutted and adequately addressed by a $350,000 bond secured by the posting of properties owned by the defendant and his mother, the release of the defendant to the third party custody of his mother[5] at her residence and Pretrial Services' supervision of the defendant for compliance with the many recommended conditions of release.

Nonetheless, it is appropriate that the assigned district judge be able to hear the government's appeal before an actual release order is issued.  Accordingly, upon application of the United States for a stay of the November 20, 2006, Order of the Honorable Magistrate Judge Dale A. Drozd releasing defendant Mark Edward PARKER, and good cause appearing, **IT IS HEREBY ORDERED THAT** the issuance of a release order for defendant Mark Edward PARKER will be stayed pending the December 12, 2006, hearing on the government's motion to revoke the order setting conditions of release.

DATED: December 6, 2006.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.criminal/parker0479.ord

---

[5] The defendant's mother had personally appeared in court at both the November 17 and November 20 hearings and had been interviewed by the Pretrial Services Officer.