UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Respondent,<br><br>　　v.<br><br>MARK EDWARD PARKER,<br><br>　　　　　Movant. | No. 2:06-cr-0479 MCE AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Movant Mark Edward Parker is a federal prisoner proceeding in pro per with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 197. Movant alleges that his lawyer provided ineffective assistance, in violation of his Sixth Amendment rights, by failing to advise him properly regarding his sentencing exposure. Movant alleges that if he had been correctly advised, he would have accepted a plea offer rather than proceeding to trial. Id. at 3-4.[1] The government responded on May 8, 2015, ECF No. 211, and movant filed his reply on June 4, 2015, ECF No. 213. For the reasons set forth below, the undersigned recommends that the motion be DENIED.

FACTUAL AND PROCEDURAL BACKGROUND

An indictment dated November 29, 2006 and a superseding indictment dated June 13,

---

[1] The referenced pagination is to the court's electronic copy of the parties' pleadings.

1

1  2007 charged movant with three counts related to the distribution and possession of crack
2  cocaine. ECF No. 9, ECF No. 56. Specifically, movant was charged with conspiring to distribute
3  at least 50 grams of crack cocaine between 1999 and 2004 (Count One), distributing at least 5
4  grams of crack cocaine on August 4, 2004 (Count Two), and possessing at least 50 grams of crack
5  cocaine with the intent to distribute on February 9, 2006 (Count Three). ECF No. 56. The
6  indictment further charged that movant committed each of these offenses with a prior felony drug
7  conviction in 1994 for violation of California Health and Safety Code Section 11351.5.[2] Id. At
8  arraignment on the superseding indictment, the court advised movant that he faced a mandatory
9  minimum of 20 years to life on Counts One and Three, and "at least 10 years up to life" on Count
10 Two. ECF No. 175 at 2. On January 20, 2009, the government filed a Notice of Information
11 charging movant with a prior felony drug offense under 21 U.S.C. § 851, which would result in a
12 mandatory minimum of 20 years and a maximum term of life in prison should movant be
13 convicted.[3] ECF No. 88.
14      At trial, the prosecution produced evidence that movant held a leadership role in the
15 conspiracy to distribute crack cocaine (Count One), and that after a police officer attempted to
16 pull him over on February 9, 2006, movant sped his vehicle through a red light and collided with
17 another vehicle. ECF No. 211-2 at 25. Responding officers subsequently found marijuana and
18 crack cocaine in a brown paper bag lying on the street approximately 15 feet from the driver's
19 side door of movant's vehicle. ECF No. 211-2 at 25. On March 4, 2009, a jury convicted movant
20 on all three counts. ECF No. 130. The presentence investigation report ("PSR") found that
21 movant was responsible for approximately 5.5 kilograms of cocaine base under "relevant

---

[2] The Superseding Indictment stated movant's prior conviction was for a 1994 violation of California Health and Safety Code Section 11351.5 in Solano County, when in fact his 1994 felony conviction was for a violation of California Health and Safety Code Section 11352(a) in Alameda County, for which he served three years in prison after violating probation. Movant also had a prior conviction in 1991 for violating California Health and Safety Code Section 11351.5 in Alameda County, for which he served over a year in jail. See Presentence Investigation Report ("PSR") ¶¶ 30-33.

[3] Seven days after the government filed the Notice of Information, the prosecutor contacted movant's attorney with a plea offer (see discussion infra). The plea offer was available from January 27, 2009 to January 30, 2009, and was ultimately rejected by movant. See ECF No. 197 at 3, 20.

1    conduct" principles.  PSR ¶ 20; see U.S.S.G. § 1B1.3(a)(1)(A) (base offense level shall be

2    determined based on "all acts and omissions committed, aided, abetted, counseled, commanded,

3    induced, procured, or willfully caused by the defendant[.]").  Accordingly, the PSR computed a

4    base offense level of 36.[4]  PSR ¶ 20.  Movant's offense level was subsequently increased to 42

5    based on evidence that movant committed the offenses as part of a pattern of criminal conduct

6    engaged in as his livelihood; that movant committed reckless endangerment during his flight from

7    the police on February 9, 2006; and that movant was an organizer and manager of the distribution

8    conspiracy.  PSR ¶¶ 21-23.  The PSR then assigned movant a Criminal History Category of IV.

9    ECF No. 178 at 4; PSR ¶ 39.  The advisory Guidelines range for a defendant with an offense level

10   of 42 and a Criminal History Category of IV is 360 months to life.  PSR ¶ 71.

11        The court adopted these advisory guideline calculations and sentenced movant to 360

12   months in prison on each count, to be served concurrently.  ECF No. 171.  At the sentencing

13   hearing, the court characterized the circumstances surrounding movant's offense as "extremely

14   serious" and observed that movant's given Criminal History Category of IV was understated

15   given "the totality of the circumstances of the criminal history."  ECF No. 178 at 13.

16        Movant appealed his conviction and sentence to the United States Court of Appeals for

17   the Ninth Circuit.  ECF No. 169.  On May 6, 2013, the Ninth Circuit affirmed movant's judgment

18   and sentence.  ECF No. 195.  The Ninth Circuit found that the district court erred in allowing

19   movant's ex-wife to testify, incorrectly calculated the amount of drugs attributable to movant, and

20   incorrectly applied a two-level enhancement, but found each of these errors harmless.[5]  Id.

21   Movant filed this motion on May 2, 2014, alleging ineffective assistance of counsel regarding the

22   plea and sentencing process.  ECF No. 197.

---

[4] Under U.S.S.G. 2D1.1(c)(2), if a defendant is responsible for at least 2.8 kilograms but less than 8.4 kilograms, the base offense level is 36.  While the Ninth Circuit later found that the district court miscalculated the amount of drugs attributable to movant, see discussion infra, the error was found to be harmless because the proper amount of drugs attributable to movant was still greater than 2.8 kilograms.  ECF No. 195 at 4.

[5] The Ninth Circuit also found that the district court incorrectly applied retroactively the two-level increase for engaging in criminal conduct as a livelihood, but found the error harmless because it did not change movant's ultimate Guidelines range.  ECF No. 195 at 5. The Ninth Circuit rejected a number of movant's other challenges, finding no error.  ECF No. 195.

LEGAL STANDARDS

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under section 2255, the district court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). Both the grounds for relief and the scope of the remedy in a section 2255 proceeding are identical to those available to state prisoners under 28 U.S.C. § 2254, the federal habeas corpus statute. Davis v. United States, 417 U.S. 333, 343-44 (1974). To warrant relief, a movant must demonstrate the existence of an error which had a substantial and injurious effect or influence on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) (Brecht standard applies to habeas cases brought under section 2255 just as it does to those under section 2254), cert. denied, 541 U.S. 1011 (2004).

A court must hold an evidentiary hearing on a section 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In determining whether a hearing is required, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." United States v. Withers, 638 F.3d 1055, 1062 (9th Cir. 2011) (internal citations omitted). However, no evidentiary hearing is needed "if [movant's] allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 2004)) (quotations omitted)). Bald, conclusory, or inherently incredible allegations in a section 2255 motion are insufficient to mandate a hearing. United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993); see also United States v. Howard, 381 F.3d 873, 879 (9th Cir. 2004).

Generally, an evidentiary hearing is required if the movant "states a claim based on matters outside the record or events outside the courtroom." United States v. Burrows, 872 F.2d

915, 917 (9th Cir. 1989). But, a district court may deny a 2255 motion without a hearing where issues of credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." Watts v. United States, 841 F2d 275, 277 (9th Cir. 1988); Shah v. United States, 878 F.2d 1156, 1160 (9th Cir. 1989). The court may also "expand the record with other documentary evidence prior to determining the need for an evidentiary hearing." United States v. Espinoza, 866 F.2d 1067, 1070 (9th Cir. 1988).

## DISCUSSION

I. Movant's Ineffective Assistance of Counsel Claim

A. Overview of Claim

Movant alleges that his trial counsel, the late Robert Peters, provided deficient representation by (1) incorrectly advising him that he qualified as a career offender under the U.S. Sentencing Guidelines, and (2) failing to advise him that his "relevant conduct" would be considered at sentencing under U.S.S.G. § 1B1.3(a)(1)(A), leading movant to reject the government's plea offer. ECF No. 197 at 1-4. Movant claims that had he "been properly advised that he was not facing a sentence as a career offender, and/or…been advised that relevant conduct rules would probably drive his guideline sentence to a possible 30 years to life," he would have accepted the plea bargain of 15 years. Id. at 8. Movant states that while his trial attorney discussed the amount of time he would receive and the rights he would waive should he choose to accept the plea, his attorney "misadvised him that he had to be sentenced as a career offender and 15 years was the [lightest] sentence he could receive for a plea bargain." ECF No. 213 at 1. Movant further alleges that even though his attorney advised him it was possible he could receive a life sentence, counsel was ineffective because he did not advise movant that "relevant conduct would be the cause of a 360 month to life sentence." Id. at 3.

B. Factual Basis for Claim and Evidence Presented

Prior to trial, defense counsel hired investigator and former U.S. Probation Officer Robert Storey to review movant's criminal history in order to estimate his possible sentence. Decl. of

////

////

5

Robert Storey, ECF No. 211-7.[6]  Movant had two prior convictions for drug related offenses. ECF No. 197 at 2.  In July 1991, movant had been convicted of possession of cocaine base for sale in violation of California Health and Safety Code Section 11351.1.  Id.  In July 1994, movant had been convicted of transportation/sale of a controlled substance in violation of California Health and Safety Code Section 11352.  Id.  Mr. Storey prepared two reports to estimate movant's possible sentence in the federal case.  These two reports reflected his belief that movant's prior convictions qualified him as a "career offender" under U.S.S.G. §§ 4B1.1 and 4B1.2.  ECF No. 197 at 12 (Ex. A).[7]  Mr. Peters provided these reports to movant and informed movant that he was eligible to be sentenced as a career offender.[8]  Id. at 2-3.  Additionally, during a status conference where movant was present, Mr. Peters requested adequate time to prepare for trial because "the government [was] claiming that [movant is] a career offender, so the penalties are somewhat severe here."  ECF No. 173 at 3.  However, Mr. Storey states in his declaration that during his second review of movant's prior convictions, he remembers expressing doubt about movant's status as a career offender.  Storey Decl., ECF No. 211-7.  Movant states he did not learn that he did not qualify as a career offender until after his trial.  ECF No. 197 at 4.

On January 27, 2009, approximately 21 days prior to the scheduled trial date, the government faxed a plea offer to movant's attorney.  ECF No. 197 at 3, 20 (Ex. B).[9]  The draft plea agreement provided for a sentence of 15 years (180 months) in prison, provided movant pleaded guilty to possession with intent to distribute at least 5 grams of crack cocaine.  Id. at 20-

---

[6] The government submitted Robert Storey's declaration in support of its Opposition to movant's Motion.

[7] Movant attached Mr. Storey's reports estimating movant's possible sentencing exposure as exhibits to his Motion.

[8] To qualify as a "career offender" under U.S.S.G. § 4B1.1, a defendant charged with a felony controlled substance offense must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  A "controlled substance offense" refers to a federal or state offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b).  A defendant who qualifies as a career offender will be automatically assigned a Criminal History Category of VI.  U.S.S.G. § 4B1.1(b).

[9] The plea offer is an exhibit to movant's Motion.

22. In his cover letter the prosecutor suggested that movant qualified as a career offender, that he was currently facing a mandatory minimum of 20 years in prison, and estimated that following trial he could be sentenced to 30 years to life. Id. at 20. According to counsel's contemporaneous file memo, movant had "consistently said he want[ed] to go to trial" because he did not want to "do that much time." ECF No. 197 at 14 (Ex. A).[10] However, movant learned that a fellow inmate with "about the same criminal history" received a 10 year deal, and subsequently informed Mr. Storey that he would be willing to agree to 10 years. Id.

On January 27, 2009, Mr. Peters and Mr. Storey went to see movant to discuss his case and the plea offer. Id. Movant stated that the plea agreement was "too much time" and maintained a key prosecution witness was lying. Id. Mr. Peters, Mr. Storey, and movant also discussed the fact that none of movant's family members would return the defense team's calls, none would be willing to testify, and all other potential witnesses had "checked out badly." Id. The next day, Mr. Peters sent Mr. Storey to see movant with a copy of the plea agreement. Mr. Peters noted in a memo that "(surprisingly) [movant] said he was going to 'carefully consider [the plea agreement.]'" Id. Mr. Storey states in a declaration that he "met with [movant] and Mr. Peters multiple times in January 2009 to discuss the government's plea offer of 15 years in prison." Storey Decl., ECF No. 211-7. Mr. Storey "remember[s] Mr. Peters strongly urging movant to accept the…plea offer…to avoid much more significant sentencing exposure after a trial." Id. However, movant rejected the plea offer and the matter proceeded to trial. ECF No. 197 at 4. It is Mr. Storey's recollection that movant rejected the plea offer because he believed 15 years was too much time, and that he should receive an offer closer to 10 years. Storey Decl., ECF No. 211-7.

II.     Governing Legal Principles

To establish a constitutional violation based on ineffective assistance of counsel, a movant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington,

---

[10] Mr. Peters' memo, dated January 29, 2009 is an exhibit to movant's Motion.

466 U.S. 668, 692, 694 (1984). In evaluating counsel's performance, the court must apply a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. Id. at 689. Courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Prejudice means that the error actually had an adverse effect on the defense. Id. at 693. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The court need not address both prongs of the Strickland test if the movant's showing is insufficient as to one prong. Id. at 697.

Because the Sixth Amendment entitles criminal defendants to effective counsel during the plea-bargaining process, the two-part Strickland test applies to ineffective assistance of counsel claims relating to the plea process. Missouri v. Frye, 132 S. Ct. 1399, 1407-08 (2012); Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 57 (1985). Generally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408. Additionally, trial counsel must adequately inform the defendant so that he has "the tools he needs to make an intelligent decision" regarding the plea offer. Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002). Counsel's advice is deficient if that advice is "so incorrect and so insufficient that it undermined[s] [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." Id. at 880 (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)). While counsel must sufficiently inform and advise the defendant, "the question is not whether 'counsel's advice [was] right or wrong, but…whether that advice was within the range of competence demanded of attorneys in criminal cases.'" Turner, 281 F.3d at 880 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Counsel's defectiveness results from "gross error," not a failure to "accurately predict what the jury or court might find." Turner, 281 F.3d at 881. Counsel is also not required to "discuss in detail the significance of a plea agreement," or "strongly recommend the acceptance or rejection of a plea offer." Id. To

establish prejudice in the plea context, a movant must show a reasonable probability that both he and the trial court would have accepted the forfeited plea bargain, and that it would have resulted in a lesser sentence than that which was in fact imposed. Lafler, 132 S.Ct. at 1385. This is true even where the defendant subsequently received a fair trial. Id. at 1386.

### III.   Analysis

#### A.   Counsel's Performance Was Not Objectively Unreasonable

Movant does not allege that counsel failed to inform him of the proposed plea agreement. Cf. Frye, 132 S. Ct. at 1408. To the contrary, movant confirms that Mr. Peters communicated the plea deal to him and discussed the amount of time he would receive and the rights he would waive should he choose to accept the plea. ECF No. 213 at 1. Instead, movant compares his situation to that of the defendant in Nunes v. Mueller, 350 F.3d 1045 (9th Cir. 2003).

In Nunes, the prosecutor offered an 11 year sentence in exchange for a plea to voluntary manslaughter, but counsel told the defendant that the offer was for 22 years. 350 F.3d at 1049. The court held that plea deals must be accurately communicated to defendants to ensure their Sixth Amendment right to participate meaningfully in the decision whether or not to accept a plea bargain. Id. at 1053. Movant here contends that his situation is analogous to Nunes because his attorney gave him "the wrong information." ECF No. 197 at 8. However, this case is unlike Nunes because there is no allegation or evidence that the terms of the plea offer were inaccurately communicated.[11] Rather, movant claims that he was misinformed about his sentencing exposure, and that the erroneous advice caused him to forfeit the 15-year offer that had been correctly communicated. To determine whether counsel performed deficiently in this context, the court must analyze whether counsel's advice regarding the proposed plea agreement and movant's possible sentence after trial was sufficient to permit an intelligent decision regarding the plea offer. Turner, 281 F.3d at 880-81.

////

---

[11] It is undisputed that movant's attorney accurately conveyed the terms of the proposed plea deal and that movant was advised he faced a possible sentence of 360 months to life after trial. ECF No. 213 at 1, 3.

9

1. Advice regarding career offender status

Movant contends first that he was misadvised regarding the likelihood of sentencing as a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. As previously explained, counsel had told movant that he faced sentencing as a career offender, but movant was not ultimately sentenced as such. See ECF No. 178 at 13 (noting movant's Criminal History Category as IV, not VI as would be mandated by career offender status); see also Presentence Investigation Report ("PSR") ¶¶ 25 (no Chapter Four enhancements), 39 (criminal history category IV).[12]

Under Strickland and progeny, counsel's advice can only constitute ineffective assistance if it was objectively unreasonable. Movant states that his attorney advised him it was possible he could receive a life sentence as a career offender. ECF No. 213 at 3. A life sentence was indeed possible whether or not movant qualified as a career offender, considering relevant conduct principles and potentially applicable enhancements to the base offense level. Advising a defendant of worst-case potential outcomes is not unreasonable, it is counsel's ethical duty. At the time Mr. Peters' opined that movant might be sentenced as a career offender, that opinion was shared by Mr. Storey and by the prosecutor. This demonstrates that the predication was not unreasonable. It is well-established that counsel's failure to accurately predict an outcome does not, absent gross error, constitute unreasonable performance. Turner, 281 F.3d at 881. No gross error is apparent here.

Moreover, any error regarding movant's career offender status cannot have meaningfully impaired his ability to make an intelligent decision regarding the plea offer. Given the other factors affecting movant's Guidelines calculations, including adjustments for role in the offense, the 15-year offer was similarly advantageous whether or not movant qualified as a career offender. As a career offender, movant would have been subject to a base offense level of at least 34. See U.S.S.G. § 4B1.1(b). Combined with a mandatory Criminal History Category of VI,

---

[12] Movant argues that his prior 1994 conviction for the transportation of a controlled substance did not qualify as a prior conviction under § 4B1.2, since the conviction was "exclusively for transportation of a controlled substance and did not involve any other conduct." ECF No. 197 at 3; ECF No. 143 at 3. While it is unclear from the record which prior conviction does not meet the requirements of section 4B1.2, it is clear that at least one conviction did not qualify because movant was not sentenced as a career offender.

1  movant's lowest possible sentencing guideline range would have been between 262-327 months.
2  U.S.S.G. Ch. 5, Pt. A, Sentencing Table (Nov. 2009). Given the facts and circumstances of the
3  offense, however, an enhanced offense level was highly likely and movant was repeatedly
4  advised that he faced a potential life sentence.[13] Mr. Storey asserts that movant's potential career
5  offender status "was just one consideration in what Mr. Peters and I believed was a very high
6  exposure case." Storey Decl., ECF No. 211-7. The Guidelines calculations ultimately adopted by
7  the sentencing judge did not rest on career offender status, but nonetheless resulted in an advisory
8  sentencing range of 360 months to life. In sum, movant faced a possible sentence of decades and
9  up to life in prison whether or not he was sentenced as a career offender. Accordingly, any error
10 regarding the likelihood of a career offender sentence would not have made a 15-year offer less
11 attractive, and therefore cannot have caused movant to reject it.

12 An attorney must provide his client with the information needed to make an intelligent
13 decision regarding a plea offer. Turner, 281 F.3d at 881. According to Mr. Storey's declaration,
14 Mr. Peters went beyond this requirement when he "strongly urg[ed]" movant to accept the plea
15 offer given the possibility of a more severe sentence after a trial. ECF No. 211-7. Movant does
16 not contest the accuracy of Mr. Storey's declaration. Movant was also aware that his family
17 members were not returning his defense team's calls and other witnesses were not reliable,
18 weakening his potential case at trial. ECF No. 197 at 14 (Ex. A). Mr. Peters' contemporaneous
19 file notes, the accuracy of which are undisputed, state that movant was unwilling to take more
20 than ten years, and insisted on going to trial against counsel's advice. Id. These facts defeat a
21 Strickland claim.

22 Movant contends that if his attorney and investigator had interpreted the career offender
23 guidelines properly, they would have known that the government's offer of 15 years was "unjust
24 and not appropriate." ECF No. 213 at 2. However, criminal defendants have no constitutional

---

[13] Movant acknowledges that counsel advised him he faced a possible life sentence. ECF No. 213 (Reply) at 3. Additionally, the prosecutor's cover letter to the plea agreement stated movant faced a sentence of 30 years to life, ECF No. 197 at 20 (Ex. B), and movant was informed at arraignment that he was facing a mandatory minimum of 20 years to life for two counts, and a mandatory minimum of 10 years to life for the third count, ECF No. 175 at 2.

1    right to a plea bargain.  See Weatherford v. Bursey, 429 U.S. 545, 561 (1977).  Whether to offer a

2    particular deal is a matter of prosecutorial discretion.  Id.  Accordingly, counsel's failure to obtain

3    a more favorable plea offer cannot support relief under Strickland.

            2.   Advice regarding relevant conduct

5        Movant next asserts that his trial counsel provided ineffective assistance by failing to

6    advise him that relevant conduct principles would increase his sentence under the Guidelines.

7    The PSR shows that movant's base offense level was set at 36 given the amount of drugs

8    attributable to movant, and was subsequently increased to 42 based on movant's role in the drug

9    conspiracy and his dangerous flight from police.  PSR ¶ 20-24.  Movant states in his reply that

10   although Mr. Peters informed him he could be sentenced to 30 years to life, his attorney did not

11   specify that this sentence would be due in part to relevant conduct.  ECF No. 213 at 3.  However,

12   even assuming this omission, the fact that Mr. Peters correctly informed movant that he faced a

13   30 year to life sentence renders his advice not "so incorrect and so insufficient" to be

14   constitutionally deficient.  See Turner, 281 F.3d at 880.

15       In Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986), the Ninth Circuit held that counsel

16   "have a duty to supply criminal defendants with necessary and accurate information" regarding

17   possible sentencing exposure.  In Iaea, counsel's performance was constitutionally deficient due

18   to several errors resulting in a "gross mischaracterization of the likely outcome" combined with

19   "erroneous advice on the possible effects of going to trial."  Id.  Here, in contrast, even assuming

20   error in failing to accurately inform movant *why* he was facing 30 years to life, counsel's

21   prediction regarding movant's potential sentencing exposure was accurate.  Accordingly, the

22   court finds that Mr. Peters' advice was not a "gross mischaracterization of the likely outcome,"

23   Iaea, 800 F.2d at 865.  Accordingly, Mr. Peters' failure to advise movant of the potential impact

24   of his relevant conduct does not rise to the level of a constitutional deficiency.

25       Considering the strong presumption that counsel's representation fell within the wide

26   range of reasonable professional assistance, the record does not support a finding that Mr. Peters'

27   performance was deficient.  Even taking movant's allegations as true, counsel's performance was

28   not objectively unreasonable.  Counsel indisputably provided movant with sufficient information

to make an informed decision regarding the 15 year plea deal.  See Turner, 281 F.3d at 880.

### B.  Counsel's Performance Did Not Prejudice Movant

Even if Mr. Peters acted unreasonably by misinforming movant regarding his career offender status or failing to explain the consequences of relevant conduct, the record conclusively demonstrates that movant was not prejudiced within the meaning of Strickland.  To demonstrate prejudice, there must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.  Movant must show a reasonable probability that both he and the trial court would have accepted the forfeited plea bargain, and that it would have resulted in a lesser sentence than that which was in fact imposed. Lafler, 132 S.Ct. at 1385.

Movant's assertion that he would have accepted the plea offer if he had known he was not a career offender is inherently incredible on the present record.  See Johnson, supra, 988 F.2d at 945.  Movant states that Mr. Peters told him 15 years was the lightest sentence he could receive. ECF No. 213 at 3.  This suggests that movant had every incentive to accept the plea offer given his known sentencing exposure.  Although movant would no doubt have accepted the plea offer had he been able to foresee the sentence he would actually receive, prejudice requires a reasonable probability *at the time of the offer* that movant would have accepted it absent counsel's error.  See Turner, 281 F.3d at 880.  Movant's self-serving statement here is insufficient to show a probability that his decision would have been different.  See id. at 881.

Moreover, Mr. Peters' notes and Mr. Storey's declaration suggest that movant rejected the plea offer because he wanted to go to trial, believed the prosecution's main witness was lying, and because another inmate with "the same criminal history" had received a better plea offer, not because of any advice related to his career offender status.

Trial counsel's failure to advise movant regarding applicable relevant conduct principles was also not prejudicial.  Movant has not demonstrated a reasonable probability that he would have accepted the plea bargain had counsel explained that he was facing a 30 year to life sentence in part because of relevant conduct.  See Lafler, 132 S.Ct. at 1385.  It is undisputed that counsel did inform movant that he faced a sentence up to 30 years to life.  As noted above, the prosecutor

and court also emphasized this possibility. Again, the evidence presented by movant's own exhibit in the form of Mr. Peters' memo suggests that movant wanted to go to trial and believed that 15 years was "too much time." ECF No. 197 at 14. Movant has not presented any evidence or suggested any reason why he would have taken the plea offer had he known that relevant conduct was potentially one cause of a 30 year to life sentence. Given the record here, the court need not and does not credit movant's statement that he would have accepted the plea offer had he understood the application of relevant conduct principles. See Turner, 281 F.3d at 881 (self-serving statements alone are insufficient to establish constitutional violations because otherwise "every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer.").

### C. An Evidentiary Hearing Is Unnecessary

For the reasons discussed, the petition, files, and records of this case conclusively demonstrate that counsel did not render ineffective assistance by failing to adequately advise petitioner regarding his sentencing exposure and the benefits of the offered plea bargain. An evidentiary hearing is not required, because movant's allegations regarding Mr. Peters' performance fail to support relief and his allegations regarding prejudice are refuted by the record, including his own exhibits. See United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989).

### CONCLUSION

The record demonstrates that, assuming movant's allegations are true, his trial counsel's alleged errors were neither objectively unreasonable nor prejudicial, and thus his representation was not constitutionally deficient.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's motion under 28 U.S.C. § 2255, ECF No. 197, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.1991).

DATED: May 9, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE