UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:06-cr-00479-KJM-AC-1 |
| Plaintiff, | ORDER |
| v. | |
| Mark Edward Parker, | |
| Defendant. | |

Defendant Mark Edward Parker is a 50-year-old man who has served 16 years of a 30-year sentence for a non-violent drug offense.  *See* Minutes for Sentencing Hearing, ECF No. 167. Mr. Parker has filed a motion to reduce his sentence, citing section 404 of the First Step Act, his rehabilitation, and his proposed release plan.  Mot. to Reduce Sentence (Mot.) at 2, ECF No. 246.[1]  The government opposes the motion, *see* Opp'n, ECF No. 251, and the matter is fully briefed, *see* Reply, ECF No. 256.  The court directed the government to provide a surreply in light of the Supreme Court's decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022).  *See* Minute Order, ECF No. 257.  The government has not responded.  For the reasons explained below, **the court grants the motion**.

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

I.   **BACKGROUND**

In November 2006, Mr. Parker was charged with three counts related to distribution and possession of crack cocaine.  *See* Indictment (Nov. 29, 2006), ECF No. 9; Superseding Indictment (June 13, 2007), ECF No. 56.  Specifically, he was charged with violating 21 U.S.C. §§ 846 and 841(a)(1) by conspiring to distribute at least 50 grams of crack cocaine between 1999 and 2004 (Count One), distributing at least 5 grams of crack cocaine in August 2004 (Count Two), and possessing at least 50 grams of crack cocaine with the intent to distribute in early 2006 (Count Three).  *See generally* Superseding Indictment.  The indictment also charged he committed these offenses after having suffered a prior felony drug conviction in 1994 for violation of a provision of the California Health and Safety Code.  *Id.* at 2–3.  At arraignment, the court advised Mr. Parker he faced a mandatory minimum of 20 years to life on Counts One and Three, and at least ten years on Count Two.  Arraignment at 2–3, ECF No. 175.  In early 2009, Mr. Parker rejected a plea offer of 15 years, *see* Mot. to Vacate at 20, ECF No. 197, and the matter proceeded to trial.

The jury found Mr. Parker guilty on all three counts.  Verdict Form, ECF No. 130.  At trial, the prosecution also produced evidence that when a police officer attempted to stop Mr. Parker in February 2006, he ran a red light and collided with another vehicle.  *See* Sentencing Mem. at 10, ECF No. 164.  The presentence investigation report (PSR) found Mr. Parker was responsible for 5.5 kilograms of cocaine base under relevant conduct principles and computed a base offense level of 36.  PSR ¶ 20.[2]  Because of evidence indicating he (1) committed the offenses as part of a pattern of criminal conduct, (2) committed reckless endangerment while fleeing from the police, and (3) was an organizer and manager of the distribution conspiracy, his offense level was increased to 42.  *Id.* ¶¶ 21–24.  The PSR assigned him a Criminal History Category of IV, *id.* ¶ 39, resulting in an advisory guideline range of 360 months to life, *id.* ¶ 71.  The sentencing court adopted the advisory guideline recommendations and sentenced Mr. Parker to 30 years.  *See* Judgment and Commitment, ECF No. 171.  At the sentencing hearing, the

---

[2] The PSR has not previously been filed on the court's docket, but the court has obtained and reviewed a copy of the PSR, and is now arranging for the PSR to be filed under seal according to the court's current policy with respect to the filings of PSRs.

1    district judge then presiding suggested Mr. Parker's Criminal History Category of IV was

2    understated given "the totality of the circumstances of the criminal history."  Transcript of

3    Judgment Sentence (May 5, 2011) at 13, ECF No. 178.  Nonetheless, the judge ultimately

4    followed the recommendation in the PSR, expressing the "belief that the probation officer's

5    recommendation is exactly correct" and determining the sentence imposed was "called for by

6    law" and "fair, just, and reasonable."  *Id.*  Mr. Parker appealed his conviction.  Not. of Appeal,

7    ECF No. 169.  The Ninth Circuit concluded the trial court "miscalculated the amount of crack

8    cocaine attributable" to Mr. Parker and found him responsible instead for more than 2.8

9    kilograms, but not 5.5 kilograms, of crack cocaine.  *See United States v. Parker*, 526 F. App'x

10   740, 742 (9th Cir. 2013) (unpublished).  The Ninth Circuit found the errors in the trial court

11   proceedings harmless and affirmed the judgment and sentence.  *See generally id.*

12         In 2014, Mr. Parker filed a section 2255 motion alleging ineffective assistance of counsel

13   in the unsuccessful plea negotiation and also the sentencing process.  Mot. to Vacate, ECF No.

14   197.  The district judge then presiding adopted the magistrate judge's findings and

15   recommendations and denied the motion to vacate.  ECF No. 220.  In late 2016, Mr. Parker

16   moved to reduce his sentence based on 18 U.S.C. § 3582(c)(2), which permits a court to reduce

17   the term of imprisonment for a defendant who was sentenced based on a sentencing range

18   subsequently lowered by the Sentencing Commission.  ECF No. 221.  The government opposed,

19   ECF No. 223, and the judge then presiding denied the request in mid-2017, Prev. Order (May 10,

20   2017), ECF No. 225.  While the court agreed the guideline range had been reduced, it found a

21   sentencing reduction was not warranted because Mr. Parker "ran an ongoing, long-term [drug

22   trafficking organization] through which he inundated the City of Vallejo with large quantities of

23   crack cocaine," his "primary occupation was drug trafficking and [] he had been engaged in such

24   activities for years," and he "demonstrated a flagrant disregard for both law enforcement and

25   innocent bystanders when he recklessly fled to avoid arrest."  Prev. Order (May 10, 2017) at 3.

26   Mr. Parker appealed, ECF No. 226, and the Ninth Circuit affirmed the district court's decision,

27   ECF No. 228.

1   In March 2021, Mr. Parker filed a motion for compassionate release, citing the risk posed

2   by the COVID-19 pandemic due to his "significant comorbidities."  *See* Mot. to Reduce Sentence

3   Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) at 2, ECF No. 232.  The government opposed, ECF

4   No. 237, and the previously-assigned district judge, still presiding over the case, denied the

5   motion, Prev. Order (Sept. 23, 2021), ECF No. 244.  The court found Mr. Parker did not carry his

6   burden to establish compassionate release because he refused to be vaccinated and his underlying

7   medical conditions were "stable."  Prev. Order (Sept. 23, 2021) at 5.  The court also found

8   release would be inappropriate after consideration of the 18 U.S.C. § 3553(a) factors, reiterating

9   many of the concerns identified in its May 10, 2017 order denying Mr. Parker's motion to reduce

10  his sentence.  *Id.* at 5–6.  The court also cited Mr. Parker's "BOP disciplinary history," refusal to

11  "accept[] responsibility for his crimes," and history of "violence against women" as weighing

12  against release.  *Id.* at 5.

13  Mr. Parker now moves to reduce his sentence based on section 404 of the First Step Act.

14  *See generally* Mot.  The government opposes.  *See generally* Opp'n.

15  **II.      LEGAL STANDARD**

16  The First Step Act of 2018 authorizes district courts to impose reduced sentences for

17  qualifying movants "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at

18  the time the covered offense was committed."  Pub. L. No. 115-391, § 404(b), 132 Stat. 5194,

19  5222 (2018).  A "covered offense" is defined as "a violation of a Federal criminal statute, the

20  statutory penalties for which were modified by . . . the Fair Sentencing Act[,] . . . that was

21  committed before August 3, 2010."  *Id.* § 404(a).  A court facing a motion for a reduced sentence

22  based on these provisions is guided by two questions: "First, *may* the court reduce the sentence?

23  And second, *should* the court reduce the sentence?"  *United States v. Shaw*, 957 F.3d 734, 736

24  (7th Cir. 2020) (emphases in original).  If a defendant is eligible for a reduced sentence under

25  sections 404(a) and 404(c), a court next determines whether a defendant has established his right

26  to one.

27  The district court "must generally consider the parties' nonfrivolous arguments before it,"

28  *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022), and has broad discretion to consider

4

1   intervening changes of law or fact in modifying or reducing sentences under the First Step Act,

2   *id.* at 2396, 2404.  Indeed, "[t]he only limitations on a court's discretion to consider any relevant

3   materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a

4   statute or by the Constitution."  *Id.* at 2400; *see also id.* at 2401, 2404 (district courts may

5   consider "unrelated Guidelines changes" when deciding whether to modify a sentence).[3]  Finally,

6   a court must "consider the 18 U.S.C. § 3553(a) factors in the first instance when deciding whether

7   [any] changes [of law or fact] . . . justify a reduced sentence."  *United States v. Houston*, No. 20-

8   10043, 2022 WL 3097369, at *1 (9th Cir. Aug. 1, 2022).

9   **III.   ANALYSIS**

10          The First Step Act only applies to Mr. Parker if "the Fair Sentencing Act modified the

11   statutory penalties for [his] offense[s]."  *Terry v. United States*, 141 S. Ct. 1858, 1862 (2021).

12   The Fair Sentencing Act did modify Mr. Parker's statutory penalties by changing the penalties for

13   crack offenses and reducing the crack/powder cocaine ratio from 100:1 to 18:1.  *See* Fair

14   Sentencing Act of 2010, Pub. L. 111-220, § 2, 124 Stat. 2372, 2372.  The government does not

15   dispute this conclusion or Mr. Parker's eligibility to bring a motion now under the First Step Act.

16   Opp'n at 14–15.  Because Mr. Parker is eligible for a reduction, the court finds it may reduce the

17   sentence.  *See United States v. Shaw*, 957 F.3d at 736.

18          The next question is whether the court should reduce the sentence.  *See id.*  Relying on

19   *United States v. Kelley*, 962 F.3d 470, 472 (9th Cir. 2020), the government argues the "decision

20   whether to resentence an eligible defendant is committed to the discretion of the district court

21   within the confines of the established Guidelines range determined at the original sentencing."

22   Opp'n at 14 ("Indeed, *Kelley* held that nothing in the statute authorizes or permits a wide-ranging

23   re-litigation of Parker's Guidelines calculation.").  While the government correctly characterizes

24   the Ninth Circuit's holding in *Kelley*, the Supreme Court abrogated *Kelley* just two weeks after

[3] Neither of the two limitations appearing in § 404(c) of the First Step Act are relevant here.  Specifically, a court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court previously considered and rejected a motion under the First Step Act.  *See* First Step Act of 2018, Pub. L. 115–391, § 404(c), 132 Stat. 5194, 5222.

1    the government filed its opposition.  *See Concepcion*, 142 S. Ct. at 2400.  As noted, the

2    government has not provided supplemental briefing despite the court's providing the opportunity.

3    Accordingly, the court considers all other non-frivolous arguments—including regarding

4    intervening changes to the law and the facts as well as the Guidelines—in deciding whether a

5    sentence reduction is appropriate, before applying the statutory § 3553(a) factors.

6         Mr. Parker urges the court to consider that, "if sentenced today, [he] would likely receive

7    the benefit of the government's current policy recommending judges sentence crack cocaine

8    defendants without regard to the crack/powder disparity that still exists in the Guidelines, in

9    which case his guideline range would be 135-168 months."  Mot. at 7.  Mr. Parker points to

10   Senate Bill 79, the Eliminating a Quantifiably Unjust Application of the Law Act (EQUAL Act),

11   which would reduce the disparity between cocaine and crack cocaine for sentencing purposes

12   from 18:1 to 1:1 under 21 U.S.C. § 841(b)(1)(A) and (B).  *See id.* at 11–12.  While the bill is not

13   yet enacted into law, the Department of Justice provided written testimony to the Senate Judiciary

14   Committee in support of the EQUAL Act, saying, "the current sentencing differential between

15   crack and powder cocaine is not based in evidence and yet has caused significant harm in

16   particular to communities of color. It's past time to correct this."  U.S. Dept. of Justice, Readout

17   of Justice Department Leadership Meeting, March 1, 2022.[4]  And at least one other district court

18   has given weight to the EQUAL Act's proposed provisions in considering a section 404 motion.

19   *See United States v. McKinney,* 2022 U.S. Dist. LEXIS 71018, at *4–5 (D. Kan. April 18, 2022)

20   (considering EQUAL Act in evaluating defendant's motion to reduce sentence).

21        As this court has recognized, a district court has had the "authority to determine the

22   'Guidelines' 100:1 ratio between powder cocaine and crack cocaine quantities yielded an

23   excessive sentence in light of the sentencing factors outlined in 18 U.S.C. § 3553(a),'" even

24   before the First Step Act passed.  *United States v. Carrillo*, 440 F. Supp. 3d 1148, 1150–51 (E.D.

---

[4] Available at https://www.justice.gov/opa/pr/readout-justice-department-leadership-meeting-famm (last accessed Oct. 12, 2022); *see also* Statement of the U.S. Dept. of Justice Before the Committee on the Judiciary United States Senate, June 22, 2021, available at https://sentencing.typepad.com/files/doj-equal-act-testimony--final.pdf (last accessed Oct. 12, 2022).

1  Cal. 2020) (quoting *Spears v. United States*, 555 U.S. 261, 262 (2009)).  Specifically, the court

2  may "vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not

3  simply based on an individualized determination that they yield an excessive sentence in a

4  particular case."  *Spears*, 555 U.S. at 264 (emphasis in original).  In other words, as a result of a

5  standing disagreement with the Guidelines, a district court may reject and vary categorically from

6  the crack cocaine Guidelines.  *Id.* at 265–66 (approving district court's substitution of its own

7  ratio for the Guidelines' ratio in crack cocaine sentencing).  This leeway continues to apply after

8  passage of the First Step Act and even in cases in which a defendant does not present with any

9  mitigating circumstances.  *See Carrillo*, 440 F. Supp. 3d at 1151 (citing *Spears*, 555 U.S. at 263).

10         Noting the lack of evidence supporting the Guidelines' disparate treatment between

11  powder cocaine and crack cocaine, several district courts, including this one, have rejected the

12  18:1 ratio and adopted a 1:1 ratio.  *See* Transcript of Judgment & Sentencing at 27–29, *United*

13  *States v. Reese* (No. 9-26) (E.D. Cal. Jan. 12, 2012), ECF No. 138 (adopting a 1:1 ratio after

14  considering lack of evidence supporting the proposition crack cocaine is associated with greater

15  harm than powder cocaine and disproportionate impact on African-American offenders); *see also*

16  *United States v. Williams*, 788 F. Supp. 2d 847, 891–92 (N.D. Iowa 2011); *Henderson v. United*

17  *States*, 660 F. Supp. 2d 751, 753–74 (E.D. La. 2009); *United States v. Whigham*, 754 F. Supp. 2d

18  239, 246 (D. Mass. 2010); *United States v. Gardner*, 20 F. Supp. 3d 468, 473 (S.D.N.Y. 2014);

19  *United States v. Lewis*, 623 F. Supp. 2d 42, 47 (D.D.C. 2009); *United States v. Cousin*, No. 11-

20  0143, 2012 WL 6015817, at *5 (W.D. Pa. Dec. 1, 2012).  Since first declaring a policy

21  disagreement with the Guidelines in this respect, this court has maintained its position and

22  adopted a 1:1 powder/crack cocaine ratio in all cases in which the question arises.  With the

23  application of the 1:1 ratio, Mr. Parker's applicable guideline range is 135-168 months, with the

24  distinct possibility he would in fact receive a much lower term if sentenced today.

25         Additionally, the court finds based on the current record that the 18 U.S.C. § 3553 factors

26  on balance weigh in favor of Mr. Parker's request for a reduced sentence.  The sentencing factors

27  include, among others, (1) "the nature and circumstances of the offense and the history and

28  characteristics of the defendant," (2) "the need for the sentence imposed (A) to reflect the

7

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public" and (3) "to avoid unwarranted sentence disparities . . . ." 18 U.S.C. § 3553(a).

There is no doubt Mr. Parker's offenses were serious. He distributed large amounts of cocaine and endangered the public and law enforcement while fleeing from law enforcement before his apprehension. His prior criminal history and disciplinary history in prison, which involve phone abuse, being in an unauthorized area, failing to stand for count, possessing drugs/alcohol, possessing a non-hazardous tool, and unauthorized physical contact weigh against granting his motion, as the previously assigned judge found. *See* Reply Ex. 4 "Summary Reentry Plan—Progress Report (June 21, 2022)" at 5, ECF No. 256-3; Opp'n at 21. However, several other factors weigh in his favor. While Mr. Parker has accrued disciplinaries in prison, his last disciplinary infraction was five years ago for nonviolent conduct, phone abuse, and he "has maintained clear conduct" since then. Reply Ex. 4 at 5. He has served 16 years of his original 30-year sentence for a non-violent drug offense. The 16 years exceeds the top end of the recalculated Guideline range applying the 1:1 crack/power cocaine ratio; that range accounts for his criminal history and the circumstances surrounding his conviction offense. Viewed through this lens, Mr. Parker has received just punishment for the offense. Reducing his sentence is consistent with the approach other courts have taken in adjusting sentences of others in his shoes nationwide, in light of the changes to the law effected by the Fair Sentencing Act and the First Step Act; the reduction thus is consistent with the federal sentencing goal of avoiding sentencing disparities. *See, e.g.*, United States Sentencing Commission, *The First Step Act of 2018: One Year of Implementation*, 43–45 (2020) ("In the year after passage of the First Step Act, courts have granted 2,387 reductions in sentence pursuant to section 404 of the Act.").

In considering whether Mr. Parker's earlier release will undermine the important factor of protection of the public, the court notes the following mitigating information. While in prison, Mr. Parker has obtained a GED, made regular payments toward his fine, obtained positive work evaluations while working as an orderly, and completed a 12-hour drug education program. *See* Reply Ex. 4 at 4–6. The Department of Justice/Federal Bureau of Prisons' Summary Reentry

1  Plan—Progress Report for Mr. Parker identifies him as having a "LOW recidivism risk level."

2  Reply Ex. 4 at 4; *see also* Mot. Ex. 1 "Summary Reentry Plan—Progress Report (May 3, 2022)"

3  at 3 (noting Mr. Parker is a "low recidivism risk level").

4         Finally, at the request of the court, a probation officer has verified Mr. Parker's release

5  plan and found his proposed housing placement.  He will be living with his mother, who is

6  supportive of her son living with her.  She is able to financially provide for Mr. Parker and is able

7  to support him as he advances his education and obtains secure employment, while still serving a

8  substantial term of eight years of supervised release, with standard and special conditions

9  imposed as a part of his original sentence.  Judgment and Commitment at 4.  While Mr. Parker's

10  original term for supervised release was ten years, s*ee id.*, the court reduces this term to eight

11  years because the Fair Sentencing Act decreased the period of supervised release from at least ten

12  years to at least eight years, *see* Fair Sentencing Act § 2; *compare* 21 U.S.C. § 841(b)(1)(A) *with*

13  § 841(b)(1)(B).  The court also accepts the probation officer's recommendation that no additional

14  special conditions of supervised release need be imposed at this time.

15         In sum, the applicable factors weigh in favor of a reduced sentence, which the court will

16  grant.

17  **IV.    CONCLUSION**

18         For the reasons stated above, the court **grants** the defendant's motion to reduce sentence

19  based on section 404 of the First Step Act.  The court reduces Mr. Parker's sentence to time

20  served, followed by a term of supervised release of eight years.

21         There being a verified residence and an appropriate release plan in place, this order is

22  stayed for up to seven days for Mr. Parker to make appropriate travel arrangements and for BOP

23  to ensure his safe release.  Mr. Parker shall be released as soon as appropriate travel arrangements

24  are made and it is safe for him to travel.  There shall be no delay in ensuring travel arrangements

25  are made.  If more than seven days are needed to make appropriate travel arrangements and

26  ensure Mr. Parker's safe release, then the parties shall immediately notify the court and show

27  cause why the stay should be extended.

28  /////

                                                            9

1          This order resolves ECF No. 246.

2          IT IS SO ORDERED.

3    DATED:  October 12, 2022.

CHIEF UNITED STATES DISTRICT JUDGE